IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re Subpoenas to Safelite Solutions LLC and Safelite Fulfillment, Inc., | Case No. 2:16-mc-00059 |
| Non-Party Movants | |
| VIP Auto Glass, Inc., | |
| Plaintiff, | Pending as M.D. Fla. Case No. 8:16-CV-02012-T-35JSS |
| v. | |
| GEICO General Insurance Company, | |
| Defendant. | |

**MOTION TO QUASH SUBPOENAS
TO NON-PARTIES SAFELITE SOLUTIONS LLC AND SAFELITE FULFILLMENT, INC.**

Pursuant to Fed. R. Civ. P. 26 and 45, Safelite Solutions LLC and Safelite Fulfillment, Inc. (together, "Safelite") move the Court to quash two onerous 30(b)(6) deposition subpoenas served on non-party Safelite Solutions (the "Subpoenas"). The Subpoenas seek testimony that will require an estimated 15 employees of Safelite to spend hundreds of hours over several months reviewing hundreds of thousands of claims and documents, data and information about non-party Safelite's business – discovery that is unrelated to and out of proportion with the underlying claim that an insurer allegedly underpaid a Florida shop for replacing a windshield on February 8, 2016.

The Subpoenas should be quashed because (1) they are unduly burdensome, (2) they fail to allow a reasonable time to comply, and (3) they seek unfettered access to and use of trade secret and otherwise highly confidential and proprietary commercial information

regarding Safelite's custom billing and scheduling software and related databases, pricing methodology, and network of independent glass replacement and/or repair shops.[1]

For these reasons, and those more fully stated in the attached Memorandum in Support, the Court should quash the Subpoenas and award Safelite Solutions its reasonable costs and expenses, including attorneys' fees, incurred in making this Motion.

                Respectfully submitted,

                /s/ Daren S. Garcia
| | |
|---|---|
| Daren S. Garcia, Trial Attorney | (0077156) |
| William A. Sieck | (0071813) |
| Mitchell A. Tobias | (0084833) |

                VORYS, SATER, SEYMOUR AND PEASE LLP
                52 East Gay Street, P.O. Box 1008
                Columbus, OH  43216-1008
                Telephone:  (614) 464-6400
                Facsimile:  (614) 464-6350
                Email:  dsgarcia@vorys.com
                Email:  wasieck@vorys.com
                Email:  matobias@vorys.com
                *Attorneys for*
                *Safelite Solutions LLC and*
                *Safelite Fulfillment, Inc.*

---

[1] To the extent the Subpoenas purport to require the deposition of Safelite Fulfillment, Inc., they should be quashed as well because they were not issued to or served upon Safelite Fulfillment.

**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION**

Without taking any steps to avoid imposing undue burden and expense on non-party Safelite, VIP Auto Glass, Inc. ("VIP") served Safelite Solutions with deposition Subpoenas that should be quashed because they violate the core protections provided in Rules 26, 30 and 45.

The Subpoenas were issued by VIP in the case captioned *VIP Auto Glass, Inc. v. GEICO General Insurance Company*, 8:16-CV-02012-T-35JSS (M.D. Fla.) (the "Florida Action").  In the Florida Action, VIP alleges that GEICO General Insurance Company ("GEICO") paid less than VIP charges for a single windshield repair, in alleged violation of Florida law and the insured's policy with GEICO.  VIP's Complaint also proposes a putative class of Florida windshield-repair facilities – although VIP has not yet moved for certification and no class has been certified.

Safelite is not a party to the Florida Action.  Yet VIP's Subpoenas portend a fishing expedition in depositions of Safelite's corporate representatives regarding such overly broad and wide ranging topics as Safelite's business relationships, claims processing and payment services and procedures, network of referral shops, pricing methodology, and customer pricing information ***across the entire state of Florida for an unlimited period of time***.  The Subpoenas lack required proportionality and impose undue burden, do not allow a reasonable time to comply, and seek unprotected disclosure of Safelite's trade secret and otherwise highly confidential and proprietary commercial information.

Safelite attempted to negotiate the withdrawal of these objectionable Subpoenas with VIP, but VIP refused to do so.  Accordingly, for the reasons set forth more fully herein, Safelite now moves to quash the Subpoenas.

II.  **STATEMENT OF FACTS**

  A.  The Florida Action is only against GEICO under GEICO's policy and Florida law.

In the Florida Action, VIP alleges it is the assignee of benefits available to Mr. Deryl Jones (the "Insured Customer") under a standard automobile insurance policy issued in Florida by GEICO ("GEICO's policy"). (Complaint, Florida Action ECF 2 ["Compl."] at ¶¶ 14-17 [attached, without exhibits, as Ex. A].)[2] VIP took assignment of the Insured Customer's benefits on February 8, 2016 in Hillsborough County, Florida, where VIP "repaired and replaced" a single automobile windshield at a price agreed by the Insured Customer and invoiced by VIP. (Id. ¶¶ 14 & 16-18.) When VIP sought payment from GEICO, GEICO "underpaid [VIP] and has refused to pay [VIP's] charges" – paying instead "the price [GEICO] can secure from a competent and conveniently located repair facility." (Id. ¶¶ 11-12 & 19-21.) On June 1, 2016, VIP filed suit against GEICO in state court in Florida. (Id. at 1; *see also* PACER Dkt., Florida Action ["Dkt."] at 3 ECF 2 [copy dated Dec. 16, 2016 attached as Ex. B].)

VIP's suit asserts two basic claims arising from prices "established by" GEICO and allegedly "underpaid" by GEICO for the Insured Customer's windshield "repair and/or replacement" ("Windshield Work"). (Compl. ¶¶ 20 & 25-27.) First, VIP contends that GEICO is "imposing a 'de facto' unlawful deductible upon its insureds in violation of [Florida Statutes] Section 627.7288 and the express terms of [GEICO's] policy." (Id. ¶¶ 7, 11 & 36.) Second, VIP

---

[2] For the purpose of this Motion, Safelite assumes**, but does not admit**, the truth of the allegations in VIP's Complaint. The Court may take judicial notice of the Complaint and other filings and proceedings in the Florida Action. *Walburn v. Lockheed Martin Corp.,* 431 F.3d 966, 972 n.5 (6th Cir. 2005); *Lynch v. Leis,*382 F.3d 642, 647 n.5 (6th Cir. 2004); *Woods v. Crockett-Harris*, S.D. Ohio No. 2:12-cv-00231, 2012 U.S. Dist. LEXIS 176973, at *5 & n.1 (Dec. 13, 2012) (taking judicial notice of state court case histories and dockets); *Landt v. Farley*, N.D. Ohio No. 4:12CV0740, 2012 U.S. Dist. LEXIS 138157, at *1 (Sept. 26, 2012) (taking "judicial notice of matters of public record, including duly recorded documents, and court records available to the public through the PACER system via the internet") (quotation marks and citation omitted); *Bristow v. Nichols*, S.D. Ohio No. 2:12-cv-0045, 2012 U.S. Dist. LEXIS 40812, at *2 (Mar. 26, 2012) (taking notice of another court's docket and filings).

claims GEICO set and paid a price that is less than allowed under GEICO's policy, which is the "prevailing competitive price which is the price [GEICO] can secure from a competent and conveniently located repair facility." (Id. ¶¶ 7, 11, 37-38).

VIP's Complaint also includes a claim on behalf of a putative class of Florida windshield repair shops paid by GEICO for Windshield Work. (Compl. ¶¶ 39-40.) No class has been certified and VIP has not moved for class certification. (Dkt.)[3] Neither has VIP sought a "speedy hearing" on its claim for a declaratory judgment or a temporary injunction as prayed in the Complaint. (*Compare* Compl. ¶¶ 49-69 & p.20 *with* Fed. R. Civ. P. 57 & 65(a).)

GEICO removed the Florida Action to the United States District Court for the Middle District of Florida. (Dkt. at 3 ECF 1.) VIP moved to remand the case to state court and GEICO filed its response. (Id. at 4 ECF 14 & 22.) The motion is ripe for decision.[4]

B.  Neither the claims nor defenses in the Florida Action involve Safelite.

Neither Safelite Solutions nor any Safelite company is a party to the Florida Action. (Compl. at 1.) The Complaint claims a right to insurance benefits under a policy issued by GEICO, not by Safelite. (Id. ¶¶ 14-15.) Safelite did not perform the Insured Customer's Windshield Work; it was performed by VIP. (Id. ¶ 17-18.) VIP claims that GEICO, not Safelite, allegedly "underpaid [VIP]" for the Insured Customer's Windshield Work at a price "established by [GEICO] … pursuant to a formula (created by [GEICO])…." (Id. ¶¶ 20-21 & 27.) Safelite Solutions is GEICO's third-party processor of vehicle glass claims in Florida but does not establish GEICO's prices and there is no claim by or against Safelite Solutions or any Safelite

---

[3] VIP's deadline to move for class certification is March 10, 2017. (*See* Dkt. at 5 ECF 33.) Merit discovery in the Florida Action remains open until September 15, 2017 and trial is scheduled for August 2018. (Case Mgt. & Sched. Order, Florida Action ECF 30 ["CMO"] at 1-2) (attached as Ex. C.)

[4] No reply brief is allowed, M.D. Fla. Loc. R. 3.01(c), and VIP did not seek leave to file a reply. (Dkt.)

3

company in the Florida Action. (Dec. 16, 2016 Declaration of Andrew Kipker ["Kipker Decl."] at ¶ 4 [attached as Ex. D]; *see also* Compl.)

> C. The Subpoenas seek virtually unlimited testimony concerning the full range of Safelite's business dealings across Florida for all time.

Two Subpoenas and Notices of Deposition ("Notices") seeking wide-ranging testimony regarding the business blueprint for Safelite's operations and relationships across the entire state of Florida were issued and delivered to Safelite Solutions on or about November 29, 2016. (Kipker Decl. ¶ 3 & Ex. D.1 & Ex. D.2 ["Notices"] at Exs. 1 at Nos. 1-19 ["Topics"].) The Notices are identical in form and content. (Notices.) Both purport to command the deposition in Dublin, Ohio of the "Corporate Representative, Safelite Fulfillment, Inc."[5] at 10:00 a.m. on December 20, 2016 and of the "Corporate Representative, Safelite Solutions, LLC" at 1:30 p.m. on December 20, 2016. (Id. at 1.) Both also seek testimony relating to "the Safelite Companies," defined as "Safelite Fulfillment, Inc., Safelite Solutions, LLC, Service Autoglass or Safelite Glass Corp." – none of which is a party to the underlying action. (Topics at No. 1.)

In summary, the Subpoenas seek testimony from Safelite on the following exceedingly broad topics:

1. Relationship of "Safelite Companies" with GEICO in Florida (Topics No. 1);

2. Processing and payment of GEICO automobile glass claims throughout Florida, including services and procedures, information, data and documents provided between GEICO and Safelite, billing and scheduling software, and electronic records and databases (Id., Nos. 2-10 & 15[6]);

---

[5] Safelite Fulfillment provides automobile glass fulfillment, replacement and/or repair services under the trade names Safelite AutoGlass and Giant Glass™. (https://www.safelite.com/about-safelite/safelite-autoglass-companies.) Safelite Fulfillment is not a party to the Florida Action. (Compl.) The Subpoenas were not issued or delivered to Safelite Fulfillment. (Subpoenas; Kipker Decl. ¶ 7(a).)

[6] An "Exhibit 1-C" is referenced in Topic No. 15 but was not attached to either of the Subpoenas. (Subpoenas.)

4

3. "Any and all" GEICO Glass Pricing Agreements concerning GEICO insureds throughout Florida (Id., No. 11 & Exhibit 1-A thereto);

4. "Any and all" Safelite Network Participation Agreements "concerning GEICO insureds in Florida" (Id., No. 12 & Exhibit 1-B thereto);

5. Safelite's network of independent replacement and/or repair shops, including the methodology for determining participation in that network (Id., Nos. 13-14); and

6. Non-GEICO glass pricing, including automobile glass pricing by "NAGS" and prices "charged by Safelite" to non-GEICO customers (Id., Nos. 16-19).

7. <u>VIP would not withdraw the improper Subpoenas.</u>

By signature below, undersigned counsel certifies that, on December 14, 2016, a letter was sent to Mr. J. Daniel Clark, counsel for VIP, to express Safelite's objections to the Subpoenas and to seek their withdrawal. (Dec. 14, 2016 Letter from Mr. Garcia to Mr. Clark (attached as <u>Ex. E</u>).) VIP's response was received the afternoon of this filing. (Dec. 16, 2016 Letter from Mr. Crist to Mr. Garcia (attached, without exhibits, as <u>Ex. F</u>).) While VIP's response stated a willingness to extend the date for deposition, it did not accommodate or even address any of the objections to the unduly burdensome or improper scope of the Subpoenas. (Id.) Indeed, it expressly invited the filing of this motion. (Id.)

**III. APPLICABLE LAW**

A deposition subpoena should be quashed when it fails to allow a reasonable time to comply or subjects a non-party to undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A)(i) & (iv). It is also proper to quash a subpoena that requires disclosure of a trade secret or other confidential research, development or commercial information. *See* Fed. R. Civ. P. 45(d)(3)(B)(i).

And, as with all discovery devices, a third-party subpoena may only seek discovery "that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R.

5

Civ. P. 26(b)(1); *Medical Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 92 (S.D. Ohio 2013) (stating that "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26.")  The Court actually "must limit" discovery that "is outside the scope permitted by Rule 26(b)(1)" or that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i) & (iii).

**IV.     ARGUMENT**

The Subpoenas should be quashed because they violate the core protective principles of Rules 26, 30 and 45:  they lack reasonable particularity and impose undue burden seeking discovery that is not proportional to the needs of the case, they fail to allow sufficient time for compliance, and they seek unprotected access to trade secret and other highly confidential and proprietary commercial information.

**A.     The Subpoenas lack particularity and impose undue burden and expense.**

Factors relevant to the Court's consideration of burden include "relevance, the need of the [requesting] party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (internal citations and quotation marks omitted).  "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *Id*.  Indeed, the requesting party bears the burden to "establish a need for the breadth of the information sought, in response to [a non-party's] *prima facie* showing that the discovery [would be] burdensome." *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 425 (6th Cir. 1993).

6

### 1. The Subpoenas will impose undue burden and expense on Safelite.

The Notices seek information regarding Safelite's claims processing and referral network throughout all of Florida as well as unspecified details regarding its software and IT databases and unspecified policies and procedures for an unlimited time.  (Notices, Nos. 1-19.)  Preparing for testimony will impose undue burden and expense on Safelite.  For example, in 2016 alone, Safelite Solutions has processed over 119,000 claims involving Windshield Work under GEICO policies in Florida.  (Kipker Decl. ¶ 5.)  Thus, while the Subpoenas do not require Safelite Solutions to produce documents, the non-specific scope of the 19 topics set forth in the Notices will require an estimated 15 Safelite employees to spend hundreds of hours over at least three months reviewing and analyzing hundreds of thousands of documents in order to prepare two or three corporate designees to provide deposition testimony for Safelite Solutions.  (Id.)  The Subpoenas impose a significant burden and cost on Safelite by causing loss of or interference with hundreds of work hours by Safelite employees.  (Id. ¶¶ 5 & 7.)

### 2. The Subpoenas are impermissibly ambiguous and overbroad and seek irrelevant information.

The Subpoenas go well beyond information relevant to VIP's claims.  VIP's only pending claim is against GEICO for a single windshield repair for a single Insured Customer performed at a single repair shop.  (Compl. ¶¶ 14-24.)  The Subpoenas seek irrelevant information unrelated to that Windshield Work for the Insured Customer.  (Notices, Nos. 1-19 (making no mention of Mr. Jones or work or payment for Mr. Jones' Windshield Work).)  *See, e.g., Battle v. Chi. Cycle, Inc.*, N.D. Ohio No. 1:11MC61, 2012 U.S. Dist. LEXIS 161978, at *17-18 (Nov. 13, 2012) (quashing subpoena to the extent it sought information "well beyond the scope of the claims presented … especially given that no class certification has been sought").  Further, while VIP's Complaint

7

asserts a claim arising solely from Windshield Work, the Subpoenas seek information regarding all "**automobile**" or "**automotive**" glass repair and/or replacement claims.  (*Compare* Compl. ¶ 14-24 *with* Notices, Nos. 1-19.)  Automobile glass work other than Windshield Work is not relevant to the Florida Action.  *See, e.g., Mid Am. Solutions LLC v. Vantiv, Inc.,* S.D. Ohio No. 1:16-mc-2, 2016 U.S. Dist. LEXIS 53106, at *29-30 (Apr. 20, 2016) (quashing a subpoena insofar as it sought information irrelevant to plaintiffs' contract claim).

The Subpoenas also seek information for an unlimited time – including time periods not at issue in the Florida Action.  (Notices, Nos. 1-18)[7]  Even VIP's speculative request for putative class relief expressly reaches back only to June 1, 2011.  (Compl. ¶ 40.)  The Subpoenas seek overbroad and irrelevant testimony without any regard for the date-limited scope of VIP's claims.  (Notices, Nos. 1-18.)

The Subpoenas also seek information about "Safelite Companies" that are not even subject to the Subpoenas.  (Notices, No. 1.)  The "Safelite Companies" are not owned or controlled by Safelite Solutions and are not the subject of any alleged act, omission or claim in the Complaint.  (Kipker Decl. ¶ 7(a); Compl.)  *See also Mid Am. Solutions LLC,* 2016 U.S. Dist. LEXIS 53106, at *29-30 (quashing a subpoena to the extent it sought information not relevant to plaintiffs' contract claim).

Indeed, VIP does not seek or even need any information from Safelite relevant to its underlying claims against GEICO.  VIP's first claim is that the "limit of liability" under GEICO's policies imposes a de facto deductible because it is less than VIP's invoiced amount for

---

[7] Topic No. 19 is limited to February 8, 2016 but requires Safelite to speculate regarding the meaning of undefined terms and the irrelevant "price that would have been charged" at an unknown shop somewhere in Florida for Windshield Work on a car of unknown condition.  (Notices, No. 19.)  Safelite Solutions does not charge insured or uninsured customers for automobile glass repair in Florida.  (Kipker Decl. ¶ 7(d).)

8

Windshield Work and VIP's second claim is that GEICO paid less to VIP for Windshield Work than it was contractually obligated to pay. (Compl. ¶¶ 36-38.) VIP should know the price it invoiced for Windshield Work and should seek from GEICO the prices that VIP claims GEICO allegedly "established" and "underpaid." (Id. ¶¶ 16-28.) While the Court in the Florida Action will have to decide whether GEICO's prices for Windshield Work violate a Florida statute or GEICO's insurance policy, it is simply not relevant how Safelite processes claims for GEICO. (Notices, Nos. 1-10 & 15.) Nor is it relevant who is in Safelite Solutions' network of independent shops, or the prices at which Safelite Solutions processes invoices for any of its other insurance or fleet customers. (Id., Nos. 12-19.) *Hermitage Global Partners v. Prevezon Holdings Ltd.*, S.D.N.Y. Nos. 14-mc-00318 & 13-cv-6326, 2015 U.S. Dist. Lexis 20080, at *16-17 (Feb. 19, 2015) (quashing subpoena to non-party whose "business activities are ultimately not at issue in the" underlying action because "a deposition of" of the non-party "would thus likely lead to little – if any – discoverable evidence.").

The Subpoenas should also be quashed because, **according to VIP's own filings in the Florida Action, "**Defendant [GEICO] has access to all of the records that would be implicated in this class action...." (*See* VIP's Aug. 12, 2016 Motion to Remand at 5 [PageID 146], Florida Action ECF 14 (excerpt attached as Ex. G).)

### 3. The Subpoenas seek information that is not proportional to the needs of the case.

Fishing expeditions are expressly prohibited under Rule 26, which requires that discovery be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Despite that clear directive, the Subpoenas are decidedly disproportional to VIP's sole claim regarding a single instance of Windshield Work for the Insured Customer. The Subpoenas are not limited to that

9

single instance of Windshield Work for Mr. Jones.  Tellingly, they do not even mention it.  (*See generally* Notices.)  *See also Battle*, 2012 U.S. Dist. LEXIS 161978, at *17-18 (quashing subpoena to the extent it sought information "well beyond the scope of the claims presented … especially given that no class certification has been sought").

Even if the Subpoenas are measured against the uncertified class action allegations in the Complaint, they are not supported by even one of the proportionality factors set forth in Rule 26.[8]  While the **amount in controversy** and **issues** in the Florida Action may not be insignificant, **the parties already have access to relevant information** – invoiced amounts from VIP and shops for Windshield Work for alleged GEICO insureds in Florida and the alleged "prices established by [GEICO]" and allegedly "underpaid" to VIP.  (Compl. ¶ 27.)  Both **parties have adequate resources** to address the questions whether those disputed payments violate Florida Stat. 627.7288 or GEICO's insurance policies in Florida.

By contrast, the Subpoenas seek **discovery that is not important to resolving those issues**.  VIP has no need for unfettered testimony about Safelite's business practices, confidential and proprietary computer software and databases, independent referral network, and price schedules for other insurance and fleet companies.  (Notices, Nos. 1-19.)  None of that is at issue in VIP's Complaint and claims.  (*See generally* Compl.)  The Subpoenas heedlessly heap **burden and expense on Safelite that is far greater than the likely benefit of that testimony** on any of the Topics.  For example, the Subpoenas seek voluminous information

---

[8] Rule 26 provides: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the **importance of the issues at stake** in the action, the **amount in controversy**, the **parties' relative access to relevant information**, the **parties' resources**, the **importance of the discovery in resolving the issues**, and whether the **burden or expense of the proposed discovery outweighs its likely benefit**."  Fed. R. Civ. P. 26(b)(1) (emphasis added).

outside of the putative class period, they seek information regarding all vehicle glass work and not just Windshield Work, and they seek information about other "Safelite Companies" that do not process claims for GEICO and are not owned or controlled by Safelite Solutions. (Compl.; Notices; Kipker Decl. ¶ 7(a).) Safelite Solutions did not and does not establish the GEICO Price for Windshield Work for GEICO insureds in Florida. (Compl. ¶¶ 25-28; Kipker Decl. ¶ 4.)

"In the Notice of Deposition, the topics on which an examination is requested are far-reaching and pervasive….. These topics would put" Safelite "in the position of having to prepare for an open ended and virtually unlimited examination. The civil rules do not countenance this." *In re Misc. Subpoenas*, D.S.D. No. 3:16-mc-00003, 2016 U.S. Dist. Lexis 102497, at *10 & 12-13 (Aug. 1, 2016) (quashing subpoenas "broadly worded" seeking all information regarding the business relationship between the non-party and the defendants).

### 4. Any relevant information sought in the Subpoenas can be obtained from a more convenient source with lesser burden and expense.

Even if Safelite possesses information regarding prices invoiced to and paid by GEICO for Windshield Work in Florida (Notices, Nos. 1-11), that information should be available more conveniently and with less burden and expense from GEICO. (Kipker Decl. ¶ 7(b); Ex. F hereto.) By way of further example, VIP should already know the "prices for automotive glass replacement and /or repair parts and services suggested by NAGS"[9] (id., No. 16) but, if not, VIP should seek them from NAGS or GEICO, not Safelite. (Kipker Decl. ¶ 7(d).)

Safelite should not be forced to incur the time, expense and burden of providing information to VIP that is, even if relevant, more conveniently available from GEICO or other

---

[9] The Subpoenas do not define the term but, on information and belief, NAGS refers to the National Auto Glass Specifications. (*See* Kipker Decl. ¶ 7(d).)

sources. The Court should quash the Subpoenas seeking that same information from non-party Safelite. *See Hilton-Rorar v. State & Fed. Communications Inc.*, N.D. Ohio No. 5:09-CV-01004, 2010 U.S. Dist LEXIS 864, at *5, 7-9 (Jan. 5, 2010) (quashing subpoena seeking partially irrelevant, duplicative, cumulative and identical information requested and available from a party to the action); *Recycled Paper Greetings, Inc. v. Davis*, N.D. Ohio No. 1:08-MC-13, 2008 U.S. Dist. Lexis 10649, at *12-13 (Feb. 13, 2008) (quashing subpoena that was "overly broad and intrusive" and "far exceeds the scope of the [underlying] lawsuit and the Plaintiff's contractual relationship with the Defendant" where the "information sought … by the subpoenas can presumably be produced more efficiently and less intrusively by Defendant herself").

  B. <u>The Subpoenas fail to provide sufficient time to comply.</u>

The Subpoenas were delivered to Safelite Solutions on or about November 29, 2016, leaving Safelite Solutions only 21 days to prepare corporate representative testimony on the myriad matters in the Notices. (Kipker Decl. ¶ 3; Notices at 1.) But for Safelite Solutions to provide testimony and "information known or reasonably available to" it on the 19 overbroad deposition topics in the Subpoenas, an estimated 15 employees of Safelite Solutions would have to spend over 600 hours and at least three months reviewing and analyzing hundreds of thousands of claims records and other documents. (Kipker Decl. ¶ 5.) It is simply not possible for Safelite Solutions to comply with the Subpoenas as written in the time provided – or in any reasonable measure of time. On this additional basis, the Subpoenas should be quashed.

  C. <u>The Subpoenas seek unprotected disclosure of Safelite's trade secret, confidential and/or proprietary business and commercial information.</u>

Safelite Solutions is an innovative industry leader providing comprehensive third-party claims processing solutions for more than 200 insurance and fleet businesses. (Kipker Decl.

¶ 6(a).) Safelite Solutions' industry-leading position is supported by its exceptional network management, customized client transaction audits, and IT and data security software, programs and platforms. (Id.) Of course, Safelite makes a concerted effort to keep these details confidential, preserving to itself the competitive advantage of its innovative, customer-focused solution. (Id. ¶ 6(b).) Disclosure of that information would hurt Safelite while helping Safelite's competitors if not kept confidential. (Id.)

Although none of Safelite's trade secret and otherwise confidential and proprietary information is relevant to the Florida Action, VIP seeks it without any limitation or protection. Specifically, VIP's Topic Nos. 5-7, 12-14, and 17-18 all seek information that was developed by Safelite at great cost, is kept confidential by Safelite at great cost, and would hurt Safelite while helping Safelite's competitors if not kept confidential. (Kipker Decl. ¶ 6(b).) It is deserving of protection from public disclosure. Ohio Rev. Code § 1333.61(D) (defining a "trade secret" information deriving economic value from "not being generally known" or "readily ascertainable by" others who could "obtain economic value from" it and that is subject to reasonable efforts to "maintain its secrecy").

VIP offers no protection from disclosure and there is no protective order entered in the Florida Action. (*See generally* Dkt.; *see also* CMO at 4 § I.F.) Because the Subpoenas seek unprotected disclosure of protected materials and information, the Court should quash the Subpoenas. *Recycled Paper Greetings, Inc.*, 2008 U.S. Dist. Lexis 10649, at *12-13 (quashing subpoena that sought "to obtain information regarding confidential business information from American Greetings" regarding its relationship with another non-party).

13

D.    The Subpoenas were not issued to or served upon Safelite Fulfillment.

The Subpoenas purport to command a corporate representative of Safelite Fulfillment to appear for deposition. (Notices at 1.) But the Subpoenas were not issued or served upon Safelite Fulfillment. (Subpoenas at 1; Kipker Decl. ¶ 7(a).) For this reason, as well as those stated earlier, the Subpoenas should be quashed. *See Emergency Response Specialists, Inc. v. CSA Ocean Scis., Inc.*, N.D. Ala. No. 2:14-cv-02214, 2016 U.S. Dist. LEXIS 113221, at *25 & n.7 (Aug. 4, 2016) (holding that a subpoena served on a one corporation was not validly served on its parent absent proof of control and domination); *Hermitage Global Partners*, 2015 U.S. Dist. Lexis 20080, at *13 ("Without effective service, the Director Subpoena must be quashed.").

## V.    CONCLUSION

As explained herein, the Court should quash the Subpoenas because: (1) they are impermissibly ambiguous and unduly burdensome because they are overbroad and seek information not relevant to the Florida Action, seek discovery disproportional to the needs of the case that is available from more convenient sources at lesser expense and burden, seek information without any date limitation, seek information regarding a putative class that has not been certified, seek information about companies not subject to subpoena or under the control of Safelite, and seek testimony that will require an estimated 15 employees to spend several months reviewing hundreds of thousands of claims and documents, data and information; (2) fail to allow a reasonable time to comply by affording Safelite Solutions only days to prepare for a corporate representative deposition that would require several months of work to prepare 2-3 corporate designees to provide testimony regarding the knowledge and information available to Safelite Solutions (based on the review and analysis performed by the

estimated 15 employees mentioned above); and (3) seek unprotected access to and use of trade secret and otherwise highly confidential and proprietary business information regarding Safelite's billing and scheduling software, databases, and network of independent glass replacement and/or repair shops.

For those reasons, and because VIP has been unwilling or unable to withdraw the Subpoenas, the Court should quash the Subpoenas and award Safelite Solutions its reasonable costs and expenses, including attorneys' fees, incurred in making this Motion.[10]

Respectfully submitted,

/s/ Daren S. Garcia
| Daren S. Garcia, Trial Attorney | (0077156) |
| William A. Sieck | (0071813) |
| Mitchell A. Tobias | (0084833) |

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, OH 43216-1008
Telephone: (614) 464-6400
Facsimile: (614) 464-6350
Email: dsgarcia@vorys.com
Email: wasieck@vorys.com
Email: matobias@vorys.com
*Attorneys for*
*Safelite Solutions LLC and*
*Safelite Fulfillment, Inc.*

---

[10] "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. **The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees**—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1) (emphasis added).

**CERTIFICATE OF SERVICE**

I certify that, on December 16, 2016, a copy of the foregoing document was filed electronically through the Court's CM/ECF and will be served via email, overnight commercial carrier, and first-class U.S. Mail, postage-prepaid, upon:

J. Daniel Clark
Matthew A. Crist (*e-mail only*)
Clark & Martino, P.A.
3407 W. Kennedy Blvd.
Tampa, FL 33609
dclark@clarkmartino.com
mcrist@clarkmartino.com
rsmith@clarkmartino.com

David M. Caldevilla
Donald C. P. Greiwe (*email only*)
de la Parte & Gilbert, P.A.
PO Box 2350
Tampa, FL 33601
dcaldevilla@dgfirm.com
dgreiwe@dgfirm.com

John P. Marino
Lindsey R. Trowell (*email only*)
Edward K. Cottrell (*email only*)
Smith, Gambrell & Russell, LLP
50 North Laura St., Suite 2600
Jacksonville, FL 32202
jmarino@sgrlaw.com
ltrowell@sgrlaw.com
ecottrell@sgrlaw.com

/s/ Daren S. Garcia
Daren S. Garcia, Trial Attorney     (0077156)

26160739